JOHN A. DUNN CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7020. Promulgated October 24, 1927.

The sum of $60,000 taken as a deduction in the petitioner's return for the fiscal year ended June 30, 1920, and disallowed by respondent, *held* to be a reasonable salary, in addition to the amount allowed by the respondent, for the services performed by the three officers to whom paid, and therefore deductible.

*Frank Owen White, Esq.,* for the petitioner.
*C. H. Curl, Esq.,* for the respondent.

This proceeding arises from the determination of a deficiency in income and profits tax of $25,783.69 for the fiscal year ended June 30, 1920. The only question involved is the disallowance of salaries in the amount of $60,000.

#### FINDINGS OF FACT.

The petitioner is a Massachusetts corporation located at Gardner, and is engaged in manufacturing chairs and in jobbing baled cane, cane webbing, reeds and rattan. The capital stock outstanding on June 30, 1920, was $1,000,000 composed of 6,500 shares of nonvoting preferred stock and 3,500 shares of common stock, par value $100 each. The officers of the corporation were holders of the common stock in the following amounts:

|  | Shares |
|---|---|
| George A. Dunn, president | 782 |
| K. B. Cary, vice president | 884 |
| Frank C. Dunn, treasurer and clerk | 796 |

The remaining 1,038 shares of the common stock were held as follows:

|  | Shares |
|---|---|
| Commonwealth Manufacturing Co | 407 |
| Gardner Trust Co | 100 |
| Dora Dunn (sister of George and Frank Dunn) | 305 |
| Jennie D. Cary (sister of George and Frank Dunn) | 210 |
| 6 other people held | 16 |

The board of directors of the petitioner during the fiscal year 1920, was composed of the above three officers and one Joel A. Baker, who was the manager of petitioner's Boston warehouse. George A. Dunn, K. B. Cary and F. C. Dunn were also the officers and directors of the Commonwealth Manufacturing Co., which company sells its entire output to the petitioner. The offices of both corporations are located in the same building and the plant facilities of each are adjoining. George and Frank Dunn devoted very little of their time to the busi-

ness of the Commonwealth Manufacturing Co., being principally engaged by the petitioner. Cary devoted approximately 20 per cent of his time to the Commonwealth and the balance to the petitioner.

The Dunn Company operates warehouses at Boston, Chicago, and St. Paul. The chairs and other products manufactured are shipped knocked down and unfinished from the factory to the warehouses where they are assembled and finished. The managers of the warehouses received a stated salary plus 25 per cent of the profits, and they operated practically on their own responsibility, subject to price conferences and agreements with the petitioner. For the fiscal year 1920 the Boston manager received as salary and percentage of the profits, the sum of $28,000; the Chicago manager, $34,000, and the St. Paul manager, $22,000.

For the fiscal year 1920 the petitioner by its board of directors at a meeting held on August 22, 1919, voted the above three officers salaries of $20,000 each. Thereafter, and before the close of the fiscal year it was informally agreed by at least two of the directors, namely George A. and Frank C. Dunn that the salaries of the three officers should be increased from $20,000 to $40,000 each for the fiscal year 1920. Cary was at that time in the Orient on a business trip for the petitioner. The bookkeeper, acting under instructions from Frank C. Dunn, credited, under date of June 30, 1920, each of the three officers with additional salaries in the amount of $20,000 charging the same in equal amounts against administrative, selling and office expenses. No written record of the meeting or vote on increasing the salaries was made. The offices were so situated in the petitioner's building that informal discussions as to policies and the conduct of the business were of daily occurrence. Minutes of such conferences were not kept although the decisions reached at such times were carried out.

The gross sales of the petitioner for the fiscal year 1920 were the largest in its history, amounting to $2,602,318.31. The gross sales for 1919 were $1,378,747.46, while the gross sales for 1918 were $1,453,730.50. Petitioner paid salaries to its officers in 1918 in the amount of $60,000. In 1919 their salaries were $18,650 and in 1920, $120,000. For the same fiscal years after paying all charges and dividends the petitioner carried to surplus accounts $68,034.99 for 1918; $56,638.78 for 1919; and $177,717.63 for 1920. The regular 7 per cent dividends were paid on the preferred stock during these years. The usual dividend rate on common stock was 6 per cent, which was paid in 1918 and 1919, but for 1920 the dividend paid amounted to 20 per cent. During the fiscal year 1920, petitioner spent $200 for advertising.

During the fiscal year 1920, George A. Dunn and Frank C. Dunn and K. B. Cary performed unusual services for the petitioner. They

planned and supervised the construction of a two-story addition to one building, the erection of a new one-story saw mill, and a new five-story factory building. The buildings and the addition were of the type known as mill construction and the work was done by a building contractor. The completion of these buildings and the addition added a large amount of floor space to petitioner's plant at a cost of $132,161.98. The services ordinarily performed by an architect were performed by the officers and the cost of employing an architect, ranging from 6 to 10 per cent of the cost of construction, was dispensed with. ·

During the fiscal year 1920 the three officers mapped out and conducted a selling campaign for the sale of $500,000 of new capital stock. The lowest commission for which the brokers whom the officers interviewed would underwrite the issue was 15 per cent. Of this issue $186,600 was sold by brokers at a commission of 5 per cent. The balance was sold without any commission. The three officers consulted bankers, instituted and carried out an advertising campaign in the newspapers, wrote letters, interviewed prospective customers, and spent a great deal of time in personal solicitation.

The unit production of the petitioner for the fiscal year 1920 as to reeds, cane webbing, car seating and baled cane was more than double that of the previous year, while the output of chairs and baby carriages was increased by 11 per cent. Skilled labor was scarce so that it was necessary for the officers to give more than ordinary attention to the finished product. The public was buying a more expensive grade of furniture which required new patterns, a higher grade of workmanship, and a greater demand on the ability of its officers. The petitioner did not employ a general manager, a sales manager, an office expert, or credit manager, but the duties which such employes would ordinarily perform were handled by the two Dunns and Cary.

The following table shows the amounts which were voted at director's meetings as salaries to the officers and the amounts which the officers actually received during each of the fiscal years ended June 30:

| Fiscal year | Salaries voted | Salaries received | Fiscal year | Salaries voted | Salaries received |
|---|---|---|---|---|---|
| 1913 | $28,000.00 | $24,000.00 | 1917 | $19,400.00 | $19,400.00 |
| 1914 | 29,000.00 | 24,000.00 | 1918 | 19,400.00 | 60,000.00 |
| 1915 | 29,000.00 | 21,549.91 | 1919 | | 18,650.00 |
| 1916 | | 19,400.00 | 1920 | 60,000.00 | 120,000.00 |

The by-laws of the petitioner provided that the directors shall fix the salaries or compensation of all the officers notwithstanding that in so doing they shall fix their own salaries or compensation.

The petitioner took complete inventory on January 1, and July 1, of each year and partial inventories of at least three-fourths of its merchandise on June 1, and December 1, to determine its financial and credit situation. The nature of petitioner's business requires that its credit condition should be strong as it borrows heavily. Its outstanding loans at times during 1920 amounted to as much as $1,000,000. The salaries paid by petitioner to its officers are controlled to a considerable extent by the petitioner's credit situation.

The petitioner in its income-tax return for the fiscal year 1920 deducted $120,000 for officers' salaries. The respondent disallowed $60,000 of that amount.

### OPINION.

MORRIS: The sole question involved in this proceeding is whether, considering all the facts, salaries of $120,000 paid in equal amounts to each of three officers, constituted reasonable allowances for personal services actually rendered. The petitioner asserts that such salaries were reasonable, while respondent not only denies their reasonableness but asserts that the salaries represented a distribution of profits to the extent of $60,000.

Considering first the question of reasonableness, it appears that in addition to the duties ordinarily rendered by the three officers, in prior and subsequent years, certain unusual services were performed during the fiscal year 1920. A new issue of capital stock of $500,000 was underwritten and sold by them at a minimum expense, plans were prepared and the construction supervised of large and substantial additions to the factory, sales were increased through their personal efforts, and they increased the actual number of units produced notwithstanding the adverse labor conditions which affected them during the year. The facts further show that the three warehouse managers received compensation in excess of the amount allowed by the respondent to the officers.

The respondent seems to rely in his disallowance of the salary deduction, upon the vote of the board of directors shortly after the beginning of the fiscal year setting the salaries of the officers at $20,000 each. The record shows, however, that the directors frequently had informal meetings at which times the salaries as originally voted, were varied. In six of the seven years preceding the taxable year in question the salaries paid were different from those voted as shown in the record book, the variation being in amounts both greater and less.

Although the additional salaries were paid to the three officers in equal amounts, their stockholdings were not the same in the petitioner, nor did the three of them own all the voting capital stock, there being an outside ownership of almost 30 per cent. A dividend

of 20 per cent was paid on the common stock during the taxable year, which exceeded that of the two previous years, and a much larger surplus was also carried over.

Considering all the evidence we are of the opinion that the salaries of $60,000 to the three officers, the deduction of which was disallowed by the respondent, in addition to the amount already allowed, were reasonable for the services rendered, and an allowable deduction in computing net income.

*Judgment will be entered on 10 days' notice, under Rule 50.*

Considered by TRAMMELL, MURDOCK, and SIEFKIN.